Please call the next case. The next case, 4-12-0800, Michael Mann v. Workers' Compensation Comm'n. Counselor, you may proceed. May I please report, Mr. Fethersmith? I represent Michael Mann in this case, which involves a... Your name, please. I'm sorry, Your Honor, Mary Massa. Thank you. You are the employee, Michael Mann. My client was on his break, his designated break, in the break room at Stratus Foods, sat down at a break room table, which was described as like a picnic table-type table with attached benches that could fold up when the table was not in use. There was testimony that this break room table or this break room was used three times a day, morning and afternoon coffee breaks, and then for lunch as well. My client, on the date of the accident, sat down on the bench of the break room table with his coffee, sat his coffee down, but realized he was a little bit too close and wanted to scoot back a bit, and in doing so, he scooted himself off the bench, fell off the bench backwards onto his left shoulder and suffered a severe rotator cuff injury. Now, the commission majority found in this case that the employee did not face any risk greater than the general public, and so his shoulder injury did not arise out of the employment. Now, as you know, in cases like this, we look at the type of risk that the employee is exposed to, and I think based on testimony that there were similar type combination table and benches used at various places in Macon County, like Sam's Club, that this was what we would call a neutral risk, one that didn't really have a condition that was really for or against being in employment. So with neutral risk, where you have to be able to show that the employee is exposed to a risk greater than the general public or else the injury is not compensable, and in analyzing that increased risk, the courts have held that it can be something quantitative, such as an aspect of the employment that adds to the risk, or it can be quantitative, such as where the employee is exposed to a risk more frequently than the general public. Let's break it down. The evidence, as I read the record, regarding the physical characteristics of this table was somewhat conflicting. I recall it was a co-worker, Madison, testified the table was basically for young kids. It was like some young table for, you know, first graders, whatever. Richardson, who worked for the respondent, testified it was a standard industrial table. Pictures regarding the table were in the evidence, correct? Correct, Your Honor. The commission didn't find, obviously, that it was defective or somehow inherently dangerous, right? Correct, Your Honor. So are you shifting now to the frequency, or what are you saying about the table? If you look at Commissioner Mason's dissent in this case, Your Honor, that's exactly what she looked at, was the quantitative aspect of this. And when you look at cases that discuss quantitative risks, such as that Metropolitan Water Reclamation District case that I cited, but also the Illinois Consolidated Telephone Company risk case, that involved a stairway, also considered to be a neutral type of risk. In both of those cases, there was no showing of any kind of a defect in the area, in the Metropolitan case, in the area where it was found. Actually, here's the problem with this case, though, is that you could argue the frequency increased the risk of injury. However, the claimant was asked, had you used the table and the benches before that day? He answered, on different occasions. Richardson testified there were other places to sit in the break room. There could have been evidence he used it two or three times a day, but he did not testify to that. The break room table was available to employees three times a day for their coffee. But he didn't testify he used it at any particular frequency. But he testified that he has breaks and that he was on his break on that day. What I'm saying is, how do we determine, do we fill in the gaps, that he used it three times a day? He never testified to that. Well, I think the issue is, let's look at how the general public would be exposed to this risk. Let's say you go to Sam's Club and you maybe buy a hamburger or something and you want to sit down and eat it. That's going to be something that's going to, where he'd sit down at a table similar to this. Let's ask that question. Is that true? I get the picture this table would be, that you'd probably sit at a table like this if you were going to go to an elementary child's open house. Well, this table, Your Honor, my client was the only one to have measured the seat of it. And he testified it was eight to eight and a half inches wide. There was also testimony from Mr. Madison, who's quite a bit larger individual than my client was, and he testified he has to sit on the bench sideways in order to even sit at this table because it's so small. There was testimony from not only my client but also Mr. Madison that they had complained about the size of the table to their employers. There wasn't any defect in that there was a break in the bench or something like that that would qualitatively make this an increased risk. The increased risk is that a normal-sized individual like my client, who was 5'10", 190 pounds, couldn't sit down and scoot back just a little bit without falling off the backrest. Isn't the best evidence still the pictures? No, Your Honor, I don't believe so. Well, Counsel, you're trying to infer that there's a defect or that it was inappropriate for its use because of the fact that your client fell while sitting there, but that doesn't prove a defective condition. There has to be more than that. Was there any testimony that it was not fit for its intended use, that being for a break room for adults? Because, as was just pointed out, we have pictures, and the arbitrator here said that the only credible evidence of the condition of the table are the pictures. If you look at the pictures, it doesn't look like a kid's table. What do we have in the way of evidence that this table was defective in some way? Not talking about a manufacturing defect, but talking about this condition being such that it wasn't appropriate for adult use. Well, I mean, products can be dangerous if they're not fit for their intended use, and if a normal-sized individual can't sit down on a bench that's provided by the employer for their use during their breaks, for their use during their lunches, without falling off the back of it, I think that's pretty good evidence right there. Well, you might be adding to something, but that isn't what the record establishes. One person saying it's too small for the average adult, you've got the employer's manager of health and safety saying it's not too small, the average adult can't sit down there. Pictures are introduced, so how do we come to the conclusion it must be too small for an adult? Based on what? Well, there's one other bit of evidence that I think is pretty telling in this case, and that is that despite all of the complaints that Mr. Madison and my client testified that they made to the supervisors over the years, it wasn't until after Mr. Mann's accident that they actually removed this table and moved it to the outside contractor's lounge for them to use because of a fear of... But it's still in use on the premises, right? But by a much less... The outside contractors are smaller people. Is that it? No, that's not what I'm saying, Your Honor. What I'm saying is that the outside contractors would be using this table much less frequently than the employees who were provided in their break room this table with benches with attached benches for use. Ms. Patterson, can I ask you a question? Yes, Your Honor. You know, I sit an awful lot during the day, and so when I get my cup of coffee and go to sit behind my chair and I miss the chair and hit the floor, do you think that's compensable? No, Your Honor. I don't either. What did this guy do other than miss the seat? He did not miss the seat initially, Your Honor. He sat down, but he scooted back just a little bit so he wasn't so close to the table. And if this table can't accommodate a regular-sized individual... Well, wait a minute. We don't know that it can't accommodate him. He just happened to fall off. In scooting back so that he was at a reasonable position to drink his cup of coffee. Yes, Your Honor. A one-time occurrence, though, doesn't establish the defective nature of this. Was there anyone other than a layperson expressing an opinion that this could not accommodate an adult person? Because don't you, in order to establish some sort of qualitative problem here, don't you have to have something in the way of either expert testimony or a very apparent condition that would establish what you're wanting us to conclude? Getting back to my discussion of the Metropolitan Reclamation case and also the Illinois Consolidated Telephone case that I was talking about earlier, in both of those cases there wasn't a defect shown, but it was a general risk walking downstairs in the Illinois Consolidated Telephone case. It was a situation where the claimant was walking downstairs after having gone upstairs to use the facilities, the restroom, and didn't know why she fell. She just fell. And in that case they found a quantitative risk because there is a risk of descending stairs. But that's because there was testimony in the record that established the quantitative risk and the number of times traversing the stairs. Your client could have testified he used that table every time he took a break. He did not. You had the record. You said specifically, and I quote, he used the table on different occasions. So how do we define from that that he must have used it on every break? This was a break room, and this was the designated break room. And he may have used a chair in there on occasion, or he may have used the table if he wanted to sit with his friends. I don't think we can fill in the gaps in the record and assume anything, can we? Well, Your Honor, he was an employee here at Stratus Foods, and he was entitled to use the break room, and he was entitled to use the table that was provided by his employer for that. Did he announce a rule that because he was entitled to use a table more frequently than the general public, he automatically wins the case without ensuring how frequently he used it? Do you see the dilemma there? Well, all I can say is this was a designated break room. But we don't have, if we're talking about frequency, a more frequent use than the average member of the general public. Is there anything in the record that testimony from anyone, any evidence, that he was using this table more frequently than the average member of the general public, average general public member? Well, I think you would have to make an inference in terms of... An inference that there's so many breaks during the day and that they're able to use the table during the breaks? Yes, there was testimony in the record that they have three breaks a day, two coffee breaks, and then the lunch break, and that the employees use this designated break room for that purpose each day. This is a picnic table. I mean, so, I mean, it's not like going up and down stairs. I mean, we all recognize there's some danger any time you walk up and down stairs that you might fall. So, I mean, just because, let's say the record did provide that he sat at that table three times a day, wouldn't there still have to be a quantitative problem with the table for there to be a risk associated with sitting at that table? A qualitative? Quantitative. I mean, qualitative. Qualitative. Qualitative, whatever. And that was our position in the brief, that the qualitative way that this was dangerous is that it was, and this was the, my client was the only person to have actually measured the bench, eight to eight and a half inches wide. Now, I know there was some testimony in the record by the safety supervisor that this was a universal. Standard industrial table. UL approved. But there wasn't any foundation, there wasn't any testimony in the foundation as to what that actually means. And there are products that are sold in the general public, Your Honor, that can be defective based on, or dangerous based on their intended use. I want to be careful how I say this. But, I mean, we were talking about judicial notice in some of the previous cases here. Is a fact finder to take judicial notice of a bench being eight to ten inches wide being too narrow, that that is de facto defective? I think more telling, Your Honor, is the fact that my client was a normal sized individual and was not even able to scoot back just a tiny bit without falling off. Is there other evidence of other people falling off this table continually, the normal adults you're referring to? There was nothing in the record about anyone else that had fallen, Your Honor. That is correct. But there is also evidence in the record that the employer recognized that it could be a problem and they moved that table after this action. Counsel, you'll have time on reply. Thank you. Mr. Featherstone? Yes, I'm Glenn Featherstone. I represent Stratus Foods. Thank you for your time. Good afternoon. Please the court, counsel. Here we have a situation where the arbitrator denied compensability. The industrial commission affirmed that this case was not compensable. The circuit court affirmed that three tribunals have heard this and denied the claim and the decision. As I read the law, which I know you know better than I do, it's not supposed to be disturbed unless it's against the manifest weight of the evidence. Here, all of the tribunals have held that the petitioner did not carry the burden of proof that the injury arose out of employment. I always have to – the man was on break. He was doing nothing in furtherance of the business of the respondent. But I know you know this, but I always have to point it out that the personal comfort doctrine does allow the petitioner to be considered to be within the course of his employment. This is a rising out of issue only. And for a rising out of element, the petitioner's got to prove that he was exposed to a risk of injury greater than that which the general public is exposed to. I know that you know better than I do that the seminal case on this point is the Caterpillar Tractor case in which the petitioner was on his way to the parking lot and he stepped on a slope on a curb, he twisted his ankle, and the court required proof of a defect that the curb was defective. Here the petitioner is claiming that a workplace condition contributed to his injury, and that requires the proof of a defect. That's where the word risk comes from. What about her frequency? She's got two alternative theories. She invites us to adopt one of them. One of them is the picnic table size, which is a little bit of a high hurdle in light of the fact that the evidence is conflicting and the commission got the pictures and looked at them. What about her frequency argument? Yes, sir. This frequency argument came up actually after the trial and on appeal. Actually, it's the first time that I've heard about it. We got two things. One, the theory doesn't apply in this case, which I'll go into. And number two, it wasn't proved at trial, which your questions point out exactly what the problem is. The testimony was to the contrary. In fact, on cross-examination, I tried to get him to say that he had used this table many times, and he disagreed with me and said, no, I didn't. But I did on occasion. I think it was one of his answers. I tried again, and he said, well, once or twice. I think he said, well, one time or another. That's on page 428 of the record. So the first problem is that the quantitative problem here, the issue comes up as the petitioner attempts to adapt street risk cases to this situation. Under the street risk doctrine, the employee is required to travel away from the employer's place of business premises, and the employee is subjected to a broadened concept of risks. This is where I read the cases, and I believe all of them, that this is a broadening of the concept of risk. The risks of the street, the risk becomes nebulous, so that the lack of proof of a defect isn't so important. For instance, in the Caterpillar case, notice that the curb must be proved defective. That's what the court said. But under the street risk doctrine, when you apply that, and you phase over into the Metropolitan Water Reclamation District, then a six-inch dip in the sidewalk on the way to the bank is now suddenly a risk that can be quantified, as you point out. I see this broadening of the concept of risk. You still have to identify a risk here in order to quantify something, and I see here that in order to get to the street risk doctrine, other than it's got to be away from the premises, those cases all say, and you can see it in the Metropolitan Water Reclamation District, it says it five different times, I've counted it in that case, that she was required to go to the bank. She was required to do this. Here, in this case, the petitioner testified that he was never required to use this bench. He admitted he was never required to use it, and the street risk, the phase over, if you want to call it that, which is what's going on with the theory of the Metropolitan Reclamation District case, is to use the theory to get rid of the problem of identifying a risk. Further, the quantification, which is exactly what you asked me about. The petitioner then argues that he was exposed to this alleged street type risk on a quantitative basis greater than the public, but the proof in the pudding is in the record, and the record does not show this. He testified that he had used the picnic table on different occasions, and again, I said it a minute ago, when I asked him, I tried to get him to say on cross-examination that you use this many times, but he disagreed. All right, so I think you covered it, though. You're saying that the table, as I understand, there's no evidence it was defective or inherently dangerous in some way, and in spite of your best efforts, he denied using the table all the time. He did. In fact, he seemed to indicate he didn't use it that frequently. That's correct. So that's the argument. Well, let me ask you this. Let's just assume there's no defect. It's a standard-sized table. All experts agree that there's nothing wrong with the table. If that were the case, could you even prove a work-related injury by proving that you had to sit at the table a lot of times? I mean, what's the risk in sitting at the picnic table if there's no defect? I don't think there is one. There has to be a risk to begin with, right? I don't think there is one. To even employ the quantitative side of this, you have to be exposed to a risk more often than the general public. We know what a gun scares. There's a risk to doing that. But what's the risk of sitting at a standard picnic table? Do you agree with that? I totally agree with you. These aren't two independent theories of recovery. There has to be a defect. Do you agree with that? I do. And there isn't any here. Plus, the quantification wasn't proved in this case. Just the way the evidence came in, he could have testified that he was a frequent or regular user of the table and the benches, and he just absolutely does not in this record. He also testified that he didn't have to drink coffee. He testified that he could have stood up or he could have sat down. He was a forklift driver. I would have thought he would have stood up on his break. But he said it didn't make any difference. And the evidence was that there were chairs in the room which he could have sat in. These were personal decisions unrelated to his employment. I think that I did cover. I ought to say that, you know, the arbitrator found that the only credible evidence, as I think was what her finding was, was the picture of the table, the testimony that it was an industrial table, manufactured, and that it was UL approved, and that similar tables were encountered in the general public in the area of the plant. Counsel, I want to ask for clarification, because I'm not sure that I understand this concept in the work comp realm. But opposing counsel talked about where the table was placed after this or sometime after this incident occurred, and it made me think of post-accident remedial measures and the admissibility of that sort of evidence. Is that something that can be considered by the court here as proof of a defective condition of that table, the fact that it was moved out of that area afterwards? I can't imagine the significance of that. It was moved from one break room to another break room. Well, let's just, for purposes of my question, let's just say that it was documented that it was moved because of this fall, and that was, so it qualifies as a post-remedial measure. Is that something that can be considered? Well, I think that, I mean, there's a question about that, and that's not the way it is in this record, okay? But, I mean, I don't understand why you would have to have an explanation that there was a causal connection between there being a defect and it being moved to another room because of the defect. There's nothing like that in this record. You said there's no evidence as to why it was moved. None at all. Well, the argument is that the move implies that there was a defect, that the employer did not want to be exposed to any more liability. In fact, there'd be an implicit admission that it was defective. That's total speculation. There's nothing in the record that would support the reason that it was moved or not reason. Well, I think my colleague's question is that in other areas of law, that's not admissible for making that argument. That's true. It's not. It's a post-accident situation anyway. It's not an negligence case. Right. Or in a negligence case, post-accident remedial measures are inadmissible. But in a product case, the argument is to prove defect. Right. In this case, it was simply a simple, you can find it in the record, that, yes, it was moved. It was a cross-examination of Mr. Richardson. It said, well, was this moved to another room? Yeah, it's in the contractor's new room, and I think he said something like, yes, it's used all the time. So, I mean, that's what happened here. Okay? I think that between your questions, I think that we've covered the fact that the petitioner's witness had never studied any standards, never bought one of these tables, had no expertise whatsoever in it, but just testimony of their personal opinion of preference with reference to the size of the table. And I've called it, at least to myself, I've never argued this yet, but I'm going to say it. I think that this is a Goldilocks and the Three Bears kind of defect analysis. It's like, you know, the porridge was too hot. No, this porridge was too cold. This porridge is just right. Same thing with the chairs. One's too big, one's too small, one's just right. I mean, these are statements of personal opinion. There's nothing to show that there was anything wrong with this table whatsoever except a witness said, I think it was too little. Well, of course, it would depend on the size of the witness too, wouldn't it? And it did. And the man who actually testified to it was testified. It's in the record. He was a rather large fellow. Okay? Thank you, counsel. Thank you very much. Counsel, you may reply. I would just reference the court to Commissioner Mason's dissent. I think it covers the points that I was trying to make on my initial argument to the court on appeal. There was evidence in the record from the employees that they had made complaints about this table to their supervisor, and there was no evidence to the contrary other than the safety supervisor who said, well, I heard that they maybe wanted different types of tables. So the defectiveness or the dangerousness of this table lies in those employees' testimony with regard to how they felt it was too small. And, yes, you can see the picture, and maybe they do use this exact same type of table at Sam's Club, but it doesn't take away the fact that if someone's sitting on that table, on that bench, rather, and they can't move back or scoot back enough without falling off of it, I find that to be dangerous in that it's not fit for its intended use by the employees on their break. And with regard to the actual amount of proof that my client had to testify to to reach that quantitative basis, would he have had to say, yes, I use that table every day, three times a day in order for him to make the quantitative basis, or can we just look at the fact that this is a table and bench that is provided to the employees to use by their employer for their breaks that occur three times a day, and maybe it didn't happen to somebody else, but it was moved after this accident, and maybe under personal injury law that's a possible remedial measure, but there was no objection to that line of examination in the records, so the evidence did come in. The street risk case, I'm not trying to make this into or expand the street risk analogy. I'm just saying that in that case there wasn't any defectiveness of this sidewalk. It just had a dip in it and she fell. The Caterpillar case that opposing counsel was referencing had to do with a deep, there not being any kind of a quantitative analysis. It was a qualitative analysis, and there wasn't a defect there. But there was some dangerousness of this condition in that a regular-sized individual couldn't push himself back from the table without falling and severely injuring themselves. Thank you, Your Honor. I appreciate your time. Thank you, counsel, for both this matter. We'll take another advisement at this position until next year.